■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KHALAN PENDELTON, Appellant. [934 NYS2d 611]—

---

Malone Jr., J. 

In October 2007, based upon allegations that defendant threatened to shoot a group of people gathered near the porch of his apartment building and displayed a handgun to them, defendant was charged by indictment with criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree and menacing in the second degree. Following a jury trial, defendant was convicted of criminal possession of a weapon in the second degree and menacing in the second degree. County Court thereafter sentenced defendant to an aggregate prison term of 12½ years, with 3½ years of postrelease supervision. Defendant appeals.

Initially, defendant contends that the evidence is legally insufficient to support his conviction of criminal possession of a weapon in the second degree because there is no proof to establish that he possessed a gun or intended to use it unlawfully.[1] We disagree. Defendant's possession of the handgun was established by the testimony of two witnesses who were in the group of people congregated near defendant's apartment that they observed defendant display a black object protruding from the waistband of his pants, which they recognized as a gun, shortly after defendant had stated that he was going to "hammer everybody."[2] After defendant displayed the handgun, one individual in the group called the police, who arrived shortly thereafter and found a loaded handgun, ammunition and defendant's identification during a search of defendant's apartment. In addition, defendant's statement to the police after his arrest was introduced at trial. In it defendant admitted that he resided in the apartment that had been searched, and that earlier that day he had threatened to "hammer" the group of people, went into his apartment to obtain the handgun, placed it in his waistband and then showed it to some men on the porch. Defendant's possession of the handgun thus established (*see People v Gangar*, 79 AD3d 1262, 1263 [2010], *lv denied* 16 NY3d 831 [2011]), the jury was entitled to infer from such possession that defendant had intended to use the handgun unlawfully (*see* Penal Law § 265.15 [4]; *People v Solomon*, 78 AD3d 1426, 1428 [2010], *lv denied* 16 NY3d 899 [2011]).

---

1. This contention was preserved for review by virtue of defendant's specific motion to dismiss this count of the indictment on this basis.

2. Testimony at trial established that the word "hammer," when used in such manner, was slang for "gun."

Defendant's argument that the evidence is legally insufficient to support the conviction of criminal possession of a weapon in the second degree because there is no proof that the handgun was operable is not preserved for appellate review because defendant did not raise any issue with respect to the gun's operability in his motion to dismiss this count of the indictment (*see People v Green*, 84 AD3d 1499, 1500 [2011]). To the extent that defendant argues that the conviction is against the weight of the evidence based on the lack of evidence of the gun's operability, we are not convinced inasmuch as proof was offered at trial that an evidence technician tested the gun and determined that it was operable one day after it was recovered from defendant's apartment. To the extent that defendant's arguments regarding the operability of the gun can be read as a challenge to the legal sufficiency and the weight of the evidence supporting his conviction of menacing in the second degree, we find that the legal sufficiency argument is not preserved due to defendant's failure to challenge such in the motion to dismiss (*see id.*), and, in light of the evidence that the gun was indeed operable, we are not convinced that such conviction is against the weight of the evidence.

Next, we are not convinced that County Court (Drago, J.) erred in denying defendant's motion to suppress oral and written statements that he made to the police after his arrest. The record reflects that defendant was read his *Miranda* rights and he signed a waiver of those rights before being questioned by the police. He thereafter gave an oral account of the incident, which was then incorporated into a written statement that defendant reviewed, initialed and signed. Although defendant had indicated to the police officer who questioned him that he had smoked marihuana earlier in the day, the police officer testified that, at the time of the questioning, defendant did not show any signs of intoxication, indicate in any way that he did not understand what was happening or request an attorney. Under the circumstances here, County Court appropriately determined that defendant's statements were voluntarily made (*see People v Ramos*, 99 NY2d 27, 35 [2002]; *People v Gause*, 38 AD3d 999, 1000 [2007], *lv denied* 9 NY3d 865 [2007]).

The photo array from which a witness identified defendant was not unduly suggestive. A photo array is "unduly suggestive if particular features of one picture attract the viewer's attention so as to indicate that the police have made a particular selection" (*People v Means*, 35 AD3d 975, 976 [2006], *lv denied* 8 NY3d 948 [2007]). Here, contrary to defendant's contention, the braids in his hair are not a unique characteristic that at-

tracted the witness's attention inasmuch as he was not the only individual portrayed in the array with braided hair. Nor are we convinced that the series of numbers at the bottom of each photograph improperly influenced the witness's identification, particularly considering that the witness was instructed to disregard any markings or numbers on the photographs or other stylistic differences (*see People v Lawal*, 73 AD3d 1287, 1288 [2010]).

Finally, defendant's remaining contentions, including his claim that the sentence imposed is harsh or excessive, have been considered and found to be unpersuasive.

Mercure, A.P.J., Peters, Kavanagh and Stein, JJ., concur. Ordered that the judgment is affirmed.

